

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JESSICA VARNER, | § | No. 08-20-00072-CV |
| Appellant, | § | Appeal from the |
| v. | § | 109th Court District Court |
| CITY OF ANDREWS, TEXAS, | § | of Andrews County, Texas |
| Appellee. | § | (TC# 21,681–A) |

**O P I N I O N**

In this case, Appellant Jessica Varner contends the trial court erred in granting the plea to the jurisdiction of Appellee the City of Andrews, Texas (the City). Asserting two principal arguments, the City filed a plea to the jurisdiction contending the trial court lacked subject matter jurisdiction based on (1) the failure to comply with the notice requirements of the City Charter and the Texas Tort Claims Act; and (2) the lack of pleadings affirmatively establishing waiver of immunity based on a condition or use of tangible personal or real property.[1] Finding no error, we affirm.

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.101(a), (c); 101.021(2).

## I. BACKGROUND

*Factual History*

On August 5, 2017, Appellant Jessica Varner was attacked by a pack of dogs while walking near a park in Andrews, Texas. The dogs were owned by a woman named Sandra Alaniz, who arrived at the scene of the attack moments after it occurred. After the attack, Varner went to the hospital and was treated for at least 19 distinct dog bites on her body. She was released the same day. She later required surgery as a result of nerve damage related to this incident, and she also claims continuing physical and mental conditions as well. Two days later, on August 7, 2017, Varner met with the City's Mayor and Police Chief, wherein she provided notice of when, where, and how her injury occurred, and expressed her dissatisfaction with the number of dogs roaming freely due to the City's failure to euthanize animals in accordance with City ordinances. Three days after the meeting, on August 10, 2017, Varner turned in a written statement about the incident to the Andrews Police Department.

*Procedural History*

Varner filed a lawsuit against Alaniz and the City on July 23, 2019, almost two years after the attack. The general thrust of Varner's claims against the City is that it allowed stray dogs to roam free because the pound was full, and the pound was full because the City was not euthanizing impounded dogs in the timeframe allowed by its ordinances.[2] Specifically, Varner claimed the City was liable for her personal injuries based on several theories of liability: (1) arising from its governmental function of animal control pursuant to TEX. CIV. PRAC. & REM. CODE

---

[2] The parties agree that the City's ordinances allowed it to euthanize untagged animals after 3 days and tagged animals after 6 days in the pound.

§ 101.0215(a)(33); arising from the City's negligent implementation of City ordinances, which thereby waived the City's governmental immunity; arising from a condition of tangible personal or real property pursuant to TEX. CIV. PRAC. & REM. CODE § 102.021; and because the City failed to provide sufficient safeguards to prevent the animals' entrance onto City property, pursuant to TEX. CIV. PRAC. & REM. CODE § 101.022.

The City answered the suit on August 19, 2019, generally denying Varner's allegations and asserting all protections and limitations on liability as set forth in the Texas Tort Claims Act (the Act).[3] On October 3, 2019, the City filed a plea to the jurisdiction, contending that: (1) Varner failed to comply with the notice requirements of both the City of Andrews' Home Rule Charter (the Charter) and TEX. CIV. PRAC. & REM. CODE § 101.101; (2) the City's animal control ordinances did not provide a clear and unambiguous waiver of governmental immunity for the City's alleged failure to comply with said ordinances; (3) TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(33) does not waive governmental immunity under the Act; (4) Varner failed to plead facts sufficient to show the City waived its governmental immunity under §§ 101.021(2) and 101.022 of the Act; and (5) the discretionary function exception preserved the City's governmental immunity regarding Varner's claims that the City failed to provide sufficient "safeguards" to ensure Alaniz's dogs could not enter the City's streets.

Varner responded to the City's plea to the jurisdiction on November 18, 2019. After hearing argument from counsel, the trial court signed an order granting the City's plea to the jurisdiction. The trial court essentially found that (1) Varner failed to give sufficient notice of her

---

[3] The City's pleading cited to multiple sections of the Texas Civil Practice and Remedies Code including sections 101.101, 101.021, 101.022, 101.023, and 101.024.

claims as required by section 101.101 of the Act; (2) the City did not waive immunity to claims arising from the City's "animal control" functions simply because "animal control" is included in the laundry list of governmental functions in section 101.0215(a) of the Act; (3) the City did not waive immunity under section 101.021(2) of the Act; and (4) the City did not waive immunity. This appeal followed.

## II. ISSUES PRESENTED

We fist note that Varner's opening brief does not concisely state the issues presented for review as required by the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 38.1(f). Despite this procedural deficiency, we remain mindful of our duty to construe appellate briefs "reasonably, yet liberally, so that the right to appellate review is not lost by waiver," and that we "reach the merits of an appeal whenever reasonably possible." *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam). Accordingly, we construe arguments in the body of Varner's brief as presenting her issues for review.

Construing such briefing, we interpret her argument as raising two issues on appeal. First, she argues the City had actual notice of her claims, sufficient to satisfy the notice requirements of the Act. Second, she argues the City clearly waived governmental immunity pursuant to TEX. CIV. PRAC. & REM. CODE §§ 101.0215(a)(33) and 101.021(2). Of note, the City responded to these two issues as though they were otherwise presented concisely.

## III. DISCUSSION

### A. Standard of review

Governmental immunity from suit implicates a trial court's subject-matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). The trial court has a duty to "determine

4

at its earliest opportunity whether it has the constitutional or statutory authority to decide the case before allowing the litigation to proceed." *Texas Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction challenges the trial court's subject matter jurisdiction. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). The plaintiff in a lawsuit against a governmental entity bears the initial burden of alleging facts demonstrating the trial court's subject-matter jurisdiction. *Worsdale v. City of Killeen*, 578 S.W.3d 57, 59 (Tex. 2019). The questions of whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction or if undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction are questions of law. *Miranda*, 133 S.W.3d at 226. For this reason, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.*

### B. Notice of claim

A governmental entity is generally immune from suit for tort claims. *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775 (Tex. 2018). The Act waives governmental immunity for property damage, personal injury, or death, but only in limited circumstances, and only if the claimant gives notice as prescribed by law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.101. A claimant must give the governmental entity notice within six months of the incident that gives rise to the claim. *Id.* § 101.101(a). City charters and ordinances sometimes include their own notice requirements, which the Texas Legislature has "ratified and approved," even if those requirements are stricter than the Act's. *See id.* § 101.101(b); *Leach v. City of Tyler*, No. 21-0606, 2022 WL 4283082, at *1 (Tex. Sept. 16, 2022) (per curiam). The City's charter states that notice of claims for personal injury must be made in writing to the City Manager or the City Secretary within 90 days of the damage or injury. CITY OF ANDREWS HOME RULE CHARTER, art. I, § 5.

5

If the claimant does not provide formal (written) notice, she must show that the governmental entity had actual notice of the claim. *Id.* § 101.101(a), (c). Failure to provide adequate notice within the appropriate time deprives a trial court of subject-matter jurisdiction and requires the dismissal of the case. TEX. GOV'T CODE ANN. § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity."); *Worsdale*, 578 S.W.3d at 59.

The purpose of the Act's notice requirement is so that the governmental entity may "(1) identify the particular loss ultimately alleged, and (2) alert the governmental unit to something impending . . . to allow preparations to be made." *Worsdale*, 578 S.W.3d at 70–71. Thus, actual notice—as a replacement for formal notice—requires that the governmental entity have subjective awareness of its alleged fault in causing the claimed injury or damage, as ultimately alleged by the claimant. *Tenorio*, 543 S.W.3d at 776. The Supreme Court of Texas has emphasized that actual notice is different from constructive notice; the plaintiff must show that the governmental entity actually had notice of a connection between the alleged governmental conduct and causation of alleged damages. *See Worsdale*, 578 S.W.3d at 65.

*Analysis*

Here, with regard to notice, several facts are undisputed between the parties. First, it is undisputed that the City's charter shortened the notice requirement in cases such as these to 90 days. *See* CITY OF ANDREWS HOME RULE CHARTER, art. I, § 5. It is also undisputed that Varner did not provide formal, written notice of her claim to the City Manager or City Secretary until the date the underlying lawsuit was filed, July 23, 2019, or nearly two years after she had sustained injuries. Thus, Varner relies on actual notice to satisfy the Act's requirements.

6

Varner's argument in support of actual notice is that she met with agents of the City—specifically the Mayor and Police Chief—two days after the incident. Varner's petition states that during this conversation, she "explained that the pound being full should not be an impediment to municipal animal control, since ordinances provide that an untagged animal may be destroyed after 3 days and a tagged animal after 6 days." Her petition states that, in response, the Mayor indicated that she was unaware that animal "[euthanasia was] not happening per the announced schedule in the ordinances." It also states that the police chief responded, "that he disliked having to deal with animal control because of animal activists.'"

Later, in her Response to the City's plea to the jurisdiction, Varner further characterized her conversation with the Mayor and Police Chief as follows:

> [I]n Plaintiff's Original Petition, Plaintiff stated that she provided notice of the time, place, and manner of the injury. Plaintiff exhaustively documented her injuries, her status as a resident of the City of Andrews, and that representatives of [the City] knew that her claim arose from her dissatisfaction with how the City of Andrews made use of its kennels, pounds, and other animal control functions to permit dangerous dogs to roam free, including the dangerous dogs kept by [Alaniz].

But simply saying the City's representatives had notice of her claim does not make it so. Varner has brought no evidence that either the Mayor or the Police Chief came away from the meeting having subjective awareness of a possible claim that the City's conduct caused Varner's injuries. *Tenorio*, 543 S.W.3d at 776 ("[T]he actual notice provision requires that a governmental unit has subjective awareness that its fault, as ultimately alleged by the claimant, produced or contributed to the claimed injuries."). We thus agree with the City that Varner's general dissatisfaction with the City's animal control department did not place the City on notice regarding how Varner's injuries were caused by any such deficiency. For example, there is no evidence—or even allegation—that these particular dogs had ever been impounded. There is no evidence or allegation

that Varner called the City's animal control department regarding these animals and was refused service before she was attacked. In fact, Varner's own petition makes clear that these dogs were not strays; they belonged to Alaniz, they had escaped from Alaniz's private property moments before the attack, the attack occurred near Alaniz's property, and that Alaniz herself was present at the scene shortly after the attack. Additionally, as the City pointed out in its plea to the jurisdiction, Varner filled out a form providing a two-page, voluntary statement concerning the attack. In that statement, Varner described the event, but made no reference to the dogs being strays or the City's animal control procedures being a causal factor.

As support for her position, Varner cites to an opinion from one of our sister courts, *City of Wichita Falls v. Jenkins*, 307 S.W.3d 854 (Tex. App.—Fort Worth 2010, pet. denied). In *Jenkins*, a police officer rear-ended the plaintiff's car while the plaintiff was stopped at a traffic light. 307 S.W.3d at 856. Like here, plaintiff alleged she was injured as a result of the governmental entity's negligence. But *Jenkins* is inapplicable to the facts of this case for at least two important reasons. First, the Second Court of Appeals, in *Jenkins*, held that the City of Wichita Falls had adequate *formal* notice of the plaintiff's claim as a result of a letter regarding plaintiff's claims sent from the plaintiff's personal injury attorney. *Id.* at 861. Thus, the court of appeals' subsequent discussion of actual notice was not necessary to the outcome of that case. Second, it appears that the facts surrounding the plaintiff's claim of actual notice centered around a police report naming the police officer as the at-fault driver. *Id*. at 860. Here, there was no such police report attributing fault to a governmental entity or agent.

The purpose of the Act's notice requirement is not served "if a governmental unit is not subjectively aware that its alleged acts or omissions contributed to or produced injuries in the way

8

the claimant ultimately alleges." *Worsdale*, 578 S.W.3d at 64. "Knowledge that a death, injury, or property damage has occurred, standing alone, is not sufficient to put a governmental unit on actual notice for TTCA purposes." *Tenorio*, 543 S.W.3d at 776 (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)). Put simply, an actual notice claim is to be assessed by the following standard:

> We have plainly stated, however, that a governmental unit need only achieve subjective awareness of fault "as ultimately alleged by the claimant." In other words, there must be subjective awareness connecting alleged governmental conduct to causation of an alleged injury to person or property in the manner ultimately asserted. The standard is necessarily subjective, because lack of formal notice is excused only by actual, not constructive, notice. Yet at the same time, subjective awareness of alleged fault requires neither adjudication of liability nor confession of fault.

*Worsdale*, 578 S.W.3d at 65 (citations omitted).

Here, we determine that Varner's complaints about the City's animal control policies and procedures were insufficient to put the City on notice of her ultimate claim because there is no evidence of any connection between the City's conduct and the causation of the attack. *See id.* at 64 ("When the facts do not even *imply* the governmental unit's fault, they are legally insufficient to provide actual notice."). Appellant's first issue is overruled.

Notice is a prerequisite to suit. TEX. GOV'T CODE ANN. § 311.034. Because we determine that Varner did not provide formal or actual notice of her claim within the 90-day window dictated by the City's charter, this issue alone is dispositive of this appeal. We do not reach Varner's second issue of whether the Act waives the City's immunity in this case. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### IV. CONCLUSION

We affirm the trial court's order.

9

GINA M. PALAFOX, Justice

September 28, 2022

Before Rodriguez, C.J., Palafox, and Alley, JJ.