**Reversed and Rendered and Memorandum Opinion filed May 15, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00415-CV

---

## THE CITY OF HOUSTON, Appellant

## V.

## MARY MCGOWEN, Appellee

---

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-18593**

---

## M E M O R A N D U M   O P I N I O N

This interlocutory appeal arises from the trial court's denial of the City of Houston's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8) (allowing an appeal from an interlocutory order denying a plea to the jurisdiction by a governmental unit). Because timely formal notice of the claim was not provided and the City had no actual notice, the trial court erred in denying the City's plea. Accordingly, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing appellee Mary McGowen's claims for lack of subject-matter jurisdiction.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Mary McGowen filed suit against the City, alleging she was injured in a traffic accident. McGowen alleged she was a passenger in a vehicle driven by Joel Steadman Smith, which collided with a City-owned pickup truck driven by Vincent Smith, a City Public Works Department employee. McGowen sued the City and both drivers for negligence.[1] McGowen alleged she was injured as a result of the accident and was treated at a hospital for injuries to her neck, back, arm, and rib cage. McGowen further asserted that the Houston Police Department ("Police Department") investigated the accident and filed a report.

McGowen alleged that the City's sovereign immunity has been waived under the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code § 101.021 (providing a limited waiver of immunity for personal injuries proximately caused by the negligence of an employee acting within his scope of employment arising from the operation of a motor-driven vehicle). The Texas Tort Claims Act requires pre-suit notice. *See* Tex. Civ. Prac. & Rem. Code § 101.101.

The City filed a plea to the jurisdiction, alleging the trial court lacked subject-matter jurisdiction because McGowen failed to provide the City with the required notice under the Texas Tort Claims Act. The City asserted McGowen did not provide timely formal notice of her claim and the City had no actual notice of the claim before suit was filed. McGowen asserts that she provided formal notice to the City by means of a driver's crash report. McGowen also asserts that the City had actual notice of her claim sufficient to satisfy the requirements under Texas Civil Practice and Remedies Code Section 101.101(c). The trial court denied the plea to the jurisdiction without an evidentiary hearing, and this appeal followed.

---

[1] After the City filed a motion to dismiss, McGowen non-suited her claims against the City employee. *See* Tex. Civ. Prac. & Rem. Code § 101.106(e). McGowen also sued Juana G. Rodriquez, the owner of the vehicle driven by Joel Steadman Smith, but McGowen's claims against Rodriguez are not at issue in this appeal.

## II. ISSUE AND STANDARD OF REVIEW

In a single issue, the City alleges that the trial court erred in denying the City's plea to the jurisdiction because McGowen did not give the City timely formal notice of her claim and the City did not have actual notice of McGowen's claim before suit was filed. The City asserts that the absence of timely notice is an incurable jurisdictional defect. *See* Tex. Gov't Code § 311.034 ("Statutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity.").

A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (per curiam). Whether a court has jurisdiction is a question of law that is reviewed de novo. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (per curiam). Therefore, we review a ruling on a plea to the jurisdiction de novo. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). When performing our review of a trial court's ruling on a plea to the jurisdiction, we construe the pleadings liberally in favor of conferring jurisdiction. *Tex. Dep't of Transp. v. Ramirez,* 74 S.W.3d 864, 867 (Tex. 2002).

In a plea to the jurisdiction, a defendant may challenge either the plaintiff's pleadings or the existence of jurisdictional facts. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). In this case, the City challenged the existence of jurisdictional facts. Therefore, this court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id*. at 227. If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id*. at 227–28. But, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228. In ruling on a plea to the jurisdiction,

a court does not consider the merits of the parties' claims. *See id*. at 226–28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

## III. THE TEXAS TORT CLAIM ACT'S NOTICE REQUIREMENTS

The Texas Tort Claims Act requires a plaintiff to notify a governmental unit of a claim in order to invoke a waiver of sovereign immunity under that statute. Tex. Civ. Prac. & Rem. Code § 101.101. There are two methods of accomplishing notice: formal written notice and actual notice. *See id.*

The purpose of the notice requirement is to ensure prompt reporting of claims to enable governmental units to gather information necessary to guard against unfounded claims, settle claims, and prepare for trial. *Tex. Dep't Crim. Justice v. Simons,* 140 S.W.3d 338, 344 (Tex. 2004). The failure to comply with the notice requirements in the Texas Tort Claims Act deprives the trial court of subject-matter jurisdiction. *City of Dallas v. Carbajal*, 324 S.W.3d 537, 537–38 (Tex. 2010) (per curiam).

### A. Formal Notice

Regarding a claim against a governmental unit based on a waiver of immunity under the Texas Tort Claims Act, the governmental unit is entitled to written notice of a claim against it not later than six months after the day that the incident giving rise to the claim occurred. Tex. Civ. Prac. & Rem. Code § 101.101(a). "The notice must reasonably describe: (1) the damage or injury claimed; (2) the time and place of the incident; and (3) the incident." *Id.* Formal notice must be submitted in writing. *Cathey v. Booth,* 900 S.W.2d 339, 340 (Tex. 1995) (per curiam).

### B. Actual Notice

The Texas Tort Claims Act provides an exception to the written notice requirement when the governmental unit has "actual notice that . . . the claimant

4

has received some injury." *See* Tex. Civ. Prac. & Rem. Code § 101.101(c). The Supreme Court of Texas analyzed the notice provisions in the Texas Tort Claims Act in *Cathey v. Booth* and held that for a governmental unit to have such actual knowledge, the governmental unit must have knowledge of (1) a death, injury, or property damage; (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage; and (3) the identity of the parties involved." 900 S.W.2d at 341. The high court later clarified the meaning of the second requirement by stating:

> What we intended in *Cathey* by the second requirement for actual notice was that a governmental unit have knowledge that amounts to the same notice to which it is entitled by section 101.101(a).

*Simons,* 140 S.W.3d at 347. The *Simons* court explained that this requirement "includes subjective awareness of its fault, as ultimately alleged by the claimant, in producing or contributing to the claimed injury." *Id.* Subjective awareness is required because if a governmental entity is not aware of its fault, it does not have the same incentive to gather the information the statute is designed to provide. *Id.* at 347. "Fault, as it pertains to actual notice, is not synonymous with liability; rather, it implies responsibility for the injury claimed." *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 550 (Tex. 2010).

### C. The City s Notice Provisions

The City may shorten the time for notice in its charter provisions. *See* Tex. Civ. Prac. & Rem. Code § 101.101(b). The City is a home rule city deriving its power from article XI, section 5 of the Texas Constitution. *See* Tex. Const. art. XI, §5. In its plea, the City requested that the trial court take judicial notice of the provisions of the City's charter and its status as a Texas home-rule city. *See* Tex. Loc. Gov't Code § 9.008(b). The City's charter requires notice within ninety days of the incident. *See* Houston, Tex., City Charter art. IX, § 11 (1913). The verified

5

notice must include, among other matters, the amount for which the claimant will settle the claim, the actual residence of the claimant for six months before the accident, and the names and addresses of witnesses. *See id.* Compliance with these charter provisions is mandatory and the timely filing of a written notice of a claim is a condition precedent to maintenance of a suit against a city for injuries. *City of Houston v. Torres,* 621 S.W.2d 588, 590 (Tex. 1981). Notice to the City is provided through notice sent to the City Secretary. *See* Houston, Tex., Rev. Ordinances Ch. 2, art. IV, § 2-74 (1994).

## IV. ANALYSIS

The City asserts it had no notice until suit was filed fourteen months after the accident, well beyond the ninety days required in the City Charter and the Tort Claims Act's six-month notice provision. McGowen alleges in her appellate brief that a report furnished to the Texas Department of Transportation ( "Transportation Department") satisfies the formal notice requirements of the Texas Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code § 101.101(a). She also asserts the City had actual notice of her claim. *See id.* § 101.101(c). Whether a governmental unit has actual notice is a question of fact, but actual notice may be determined as a matter of law when the evidence is insufficient to raise a fact issue. *See Estate of Arancibia*, 324 S.W.3d at 549.

### A. Evidence Offered on Notice Requirements

In support of its plea, the City attached an affidavit from the City Secretary averring that McGowen did not provide the City formal notice. The City also attached authenticated copies of the Police Department accident report and internal reports by the City's Public Works & Engineering Department. None of the reports reflected a passenger in Joel Steadman Smith's car. None of the reports reflected that the City was at fault for the accident. The police report reflects that there was a

6

stop sign on Crane, the street on which Joel Steadman Smith's vehicle was moving. Although the Police Department report reflects Joel Steadman Smith's statement that the City truck "came out of nowhere," the records reflect that the City driver did not receive a traffic citation. The City driver's supervisor filed a Supervisor Investigation Report stating that the "other driver," Joel Steadman Smith, was at fault for the accident and received a citation.

McGowen filed a verified response to the plea, asserting the City had actual notice of the claim based on her notification to a City employee. McGowen alleged that an ambulance took her to "Memorial Hospital" for treatment. While at the hospital, McGowen spoke to "Mary Russell," who claimed to be a City employee. McGowen did not identify the City department for which Russell worked or what authority, if any, Russell had to investigate an accident for the City. McGowen asserted that she told Russell that she was injured as a result of the City employee's fault. She also claimed that she completed a Driver's Crash Report on the day of the accident (January 14, 2010) and she mailed it to Mary Russell on "January 14, 2012."[2] McGowen attached a copy of the crash report to her response. In the report, she identified the driver of the car in which she was a passenger as "Staffone" Smith, not Joel Steadman Smith. She did not identify the other driver. The report reflects that the accident occurred at "Crane & Hirsch" in Houston. The crash report listed injuries to McGowen's neck, back, rib cage, and bruises on her arm. The report does not reflect that the City is at fault. In the description of the incident, the report simply states, "We was coming off Crane and coming across and the City truck crash into us. [*sic*]" This statement does not identify which vehicle had the right-of-way. The City is not identified as the City of Houston, although the accident site is listed as being in Houston. The instructions on the

---

[2] McGowen's reference in her response to mailing the report on January 14, 2012, a date two years after the accident, may have been a typographical error.

crash report state that the completed form is to be mailed to the Transportation Department. This crash report is the only evidence attached to McGowen's response.

The City deposed McGowen to investigate her allegations about the City's actual notice. After the deposition, the City filed a reply to McGowen's response and attached excerpts from her deposition.[3] These excerpts contradicted McGowen's response to the City's plea in several respects. For example, McGowen testified that a friend, whom she referred to as her godsister, picked her up at the accident scene and drove her to the hospital, contrary to the allegation in her response that she was taken to the hospital by ambulance. The hospital was more fully identified as Memorial Hermann Northwest. McGowen could not provide the godsister's full name, address, or phone number. McGowen admitted that the driver's crash report was actually completed by her godsister the day after the accident. She also acknowledged that in the crash report, the driver of the vehicle in which she was a passenger is identified as "Staffone," whom she said is actually Steadman. She also acknowledged her report did not identify the same cross-street of the intersection where the crash occurred that is reflected on the

---

[3] These deposition excerpts include McGowen's testimony that:

    1) a friend McGowen could not fully identify drove by right after the accident and took her to the hospital;
    2) McGowen did not wait to talk to the police;
    3) McGowen arrived at the emergency room between noon and 1:00 p.m.;
    4) Mary Russell walked up while McGowen was discussing the accident at the hospital;
    5) McGowen had no idea what position, title, or authority Russell held with the City;
    6) McGowen did not give Russell her full name or her address, she did not tell Russell all the injuries she allegedly had suffered, and she did not tell Russell she thought the City was at fault;
    7) McGowen's friend obtained the driver's crash report form the day after the accident and filled it out for McGowen; and
    8) McGowen sent the driver's crash report to the Transportation Department, not to the City.

reports of the City driver and Police Department.[4] McGowen acknowledged sending the driver's crash report to Transportation Department, not to Mary Russell, as she had claimed in her response to the City's plea.

During her deposition, McGowen was unable to provide any additional information about Mary Russell, nor could McGowen identify Russell's position or title. McGowen testified at her deposition that Russell walked up while McGowen was talking to the nurses in the emergency room and identified herself as a City employee. McGowen admitted she spoke to no one else from the City.

In addition to these deposition excerpts, the City included with its supplemental plea a sworn record from Memorial Hermann Northwest showing that McGowen went to the emergency room on January 21, 2010, a week after the accident, instead of the day of the accident (January 14, 2010) as she had claimed.

### B. Lack of a Fact Issue on Notice

To overcome the City's plea to the jurisdiction, McGowen was required to produce evidence raising a fact question as to whether she provided formal written notice to the City or as to whether the City had actual notice. *See Miranda*, 133 S.W.3d at 228.

#### 1. Formal Notice

On appeal, McGowen asserts she provided formal notice to the City by sending the driver's crash report to the Transportation Department.[5] She does not dispute the City's evidence that notice was not provided to the City Secretary, as is required. *See* Houston, Tex., Rev. Ordinances Ch. 2, art. IV, § 2-74 (1994). The City Charter requires a claimant to provide a "duly verified" notice that includes,

---

[4] McGowen stated on the driver's crash report that the accident occurred at "Crane & Hirsch." The Police Department accident report identified the cross streets as Crane and Boyles. The City's driver identified the road where the accident occurred as Boyles.

among other things, the amount for which the claimant will settle the claim, the actual residence of the claimant for six months before the accident, and the names and addresses of witnesses. Houston, Tex., City Charter art. IX, § 11 (1913). McGowen's unverified driver's crash report sent to the Transportation Department did not provide this required information. Therefore, the evidence does not raise a fact question as to whether McGowen provided formal notice to the City.

## 2. Actual Notice

Actual notice requires evidence the City had knowledge of McGowen's injuries, subjective awareness of its alleged fault in causing the injuries, and the identities of the parties involved. *See Simons,* 140 S.W.3d at 347; *Cathey,* 900 S.W.2d at 341.

In her appellate brief, McGowen concedes, based on her deposition testimony, that her conversation with Russell at the hospital did not establish actual notice. McGowen acknowledged during her deposition that she did not tell Russell her full name and address, claim that the City was at fault in the accident, or identify either of the drivers involved in the accident. We conclude that the evidence regarding McGowen's conversation with Russell at the hospital does not raise a fact issue as to whether the City had actual notice.

Our review of the other evidence related to the City's actual notice of McGowen's claim reflects the following: Both the Police Department and the City's Department of Public Works investigated the accident. In support of its plea, the City provided sworn copies of the Police Department accident report and the internal reports by the Public Works Department. The Police Department report names the drivers of each vehicle, but it does not reflect that either vehicle had a passenger. The Public Works Department reports also do not reflect a passenger in the car driven by Joel Steadman Smith. The Police Department and Public Works

10

accident reports do not mention McGowen, much less state that she was injured. Thus, even if these reports could be construed as providing notice to the City about the accident, they are silent about any injuries to McGowen.

Accident reports are often insufficient to provide actual notice under the Tort Claims Act. *See Carbajal*, 324 S.W.3d at 538–39 (holding a police report did not provide the city with actual notice of a motorist's claim and dismissing the suit for lack of jurisdiction); *Rojas v. Cnty. of El Paso*, 408 S.W.3d 535, 541–42 (Tex. App.—El Paso. 2013, no pet.) (concluding the Texas Tort Claims Act's notice requirements were not met even though the accident report contained certain information required of formal written notice because there was no evidence of the County's subjective awareness that it was at fault for appellants' injuries); *City of San Antonio v. Herrera*, No. 04-13-00304-CV, 2013 WL 5653311 (Tex. App.—San Antonio Oct. 16, 2013, pet. filed) (mem. op.) (concluding police reports failed to raise a fact issue as to whether the City had knowledge of its alleged fault in producing or contributing to the plaintiff's injury). Merely investigating an accident also does not provide a governmental unit with subjective awareness of its fault. *Simons,* 140 S.W.3d at 347–48.

In *Carbajal,* the Supreme Court of Texas concluded that the police officer's report "was at most an initial response to the accident," explaining that "[s]imply put, the police report here is no more than a routine safety investigation, which is insufficient to provide actual notice." 324 S.W.3d at 537, 539. Because the report in *Carbajal* did not state that the City was at fault, and other entities could have been responsible for the alleged negligence, the high court concluded that the governmental unit lacked actual notice. *Id.* at 539; *cf. Ortiz-Guevara v. City of Houston,* No 14-13-00384-CV, 2014 WL 1618371, at *2–4 (Tex. App.—Houston [14th Dist.] Apr. 22, 2014, no pet. h.) (mem. op.) (finding police report raised a fact question on the City's actual notice because it assigned fault to the City police

11

officer involved in the accident)., There is no evidence in the investigative reports raising a fact question as to the City's subjective awareness of its alleged fault. The Police Department report does not assign fault for the accident and one of the Public Works Department reports states that the accident was the fault of the other driver, Joel Steadman Smith. Thus, the reports from the investigations by the Police Department and the Public Works Department do not provide actual notice to the City.

McGowen argues on appeal that the driver's crash report sent to the Transportation Department provided actual notice to the City. There is no evidence that the Transportation Department provided the report to the City or notified it in any way. Notice to one governmental unit does not impute notice to another governmental unit. *Reese v. Tex. State Dep't of Highways,* 831 S.W.2d 529, 530 (Tex. App.—Tyler 1992, writ denied) (rejecting contention that police report filed with Texas Department of Transportation imputed actual notice under the Texas Tort Claims Act to the Texas State Department of Highways and Public Transportation).

McGowen argues she is entitled to rely upon the Transportation Department's Crash Records Information System. *See* 43 Tex. Admin. Code § 25.971 (stating the Transportation Department shall be the official repository for accident reports). She argues that the City's police department uses the Transportation Department's database, and police officers are required to send their reports to the Transportation Department. *See id.* § 25.977. A driver involved in an accident that is not investigated by law enforcement also may complete a driver's crash report and submit it to the Transportation Department. *See id.* § 25.976. McGowen contends that because the Transportation Department's database is the repository for accident information, it is for the benefit of investigators, and an investigator such as the City Public Works Department

12

supervisor, Howard Smith, could have obtained a copy of the report from the Transportation Department. *See* Tex. Transp. Code § 550.065 (setting out procedures to obtain copies of accident reports). There is no evidence that the supervisor had been notified that McGowen was a passenger in the vehicle driven by Joel Steadman Smith so that he would have a reason to request a copy of McGowen's report. The reports prepared by the Police Department and the City's Public Works Department do not mention McGowen.

Notice can be imputed to the City by an agent or representative who has a duty to gather facts and investigate. *Texas Tech Univ. Health Sci. Ctr. v. Lucero*, 234 S.W.3d 158, 163, 168 (Tex. App.—El Paso 2007, pet. denied); *City of Houston v. Daniels*, 66 S.W.3d 420, 424 (Tex. App.—Houston [14th Dist.] 2001, no pet.). McGowen has not cited any authority supporting the proposition that a report filed with the Transportation Department imputes notice to the City or another department, however. She cites a case from the Fourth Court of Appeals stating "a governmental entity cannot put on metaphorical blinders and designate only one person in its entire organization through whom actual notice may be imputed when the facts support that there are other representatives who have a duty to gather facts and investigate on behalf of the governmental entity." *Univ. of Tex. Health Sci. Ctr. at San Antonio v. Stevens*, 330 S.W.3d 335, 339-40 (Tex. App.—San Antonio 2010, no pet.). In *Stevens,* a medical malpractice case, the court found a fact issue on actual notice because the resident's anesthesia error was reported to the program director, who investigated the incident. *Id.* at 339–41. McGowen's injuries and allegations that the City was at fault were not reported to a City employee with a duty to investigate. *Stevens* does not support McGowen's position.

McGowen also cites *City of Wichita Falls v. Jenkins,* 307 S.W.3d 854 (Tex. App.—Fort Worth 2010, pet. denied). *Jenkins* is also inapposite because the

13

*Jenkins* court held that the city clerk was actually provided timely formal notice of the claim in that case. *Id.* at 858–61. Therefore, the *Jenkins* court's statements regarding actual notice are not necessary to the disposition of the appeal and are obiter dicta. *See id*. McGowen cites *Jenkins* for the proposition that actual notice includes notice "to the extent that a prudent entity could ascertain its potential liability stemming from an incident, either by conducting further investigation or because of its obvious role in contributing to the incident." *Id.* at 858. But, we may not follow this legal standard because it has been disapproved by the Supreme Court of Texas. *See Simons*, 140 S.W.3d at 346–48.

Moreover, the driver's crash report failed to provide enough information for the City to conduct a meaningful investigation and it is insufficient to establish the City's subjective awareness of its alleged fault. The report does not identify the City employee driving the truck, it misnamed the driver of the vehicle in which McGowen was a passenger, and it lists a different street location for the accident than is reflected on the other reports. Nothing in the report directly assigns fault. McGowen alleged the City truck crashed into the vehicle in which she was a passenger, but she did not state which vehicle had the right-of-way or that the City was at fault. We conclude that the driver's crash report is insufficient to raise a fact question on actual notice to the City.

The City also did not have actual notice of McGowen's claim by virtue of the presence of its police officer at the scene after the accident. While the police officer may have had knowledge that a City employee was involved in the accident, there is no evidence to show that the police officer had any knowledge about McGowen's presence in the vehicle, her alleged injuries, or the City's alleged fault in causing those injuries. *See City of Houston v. Atkins*, No. 14-10-01265-CV, 2011 WL 1744207, at *3 (Tex. App.—Houston [14th Dist.] May 5, 2011, no pet.) (mem. op.) (holding the evidence failed to present a jurisdictional

14

fact issue regarding actual notice even though City employees were present at the scene of the accident).

In *Atkins,* two Metropolitan Transit Authority bus passengers sued for injuries they alleged were sustained as a result of a single vehicle accident that occurred when the bus driver took evasive action to avoid hitting an exposed and broken metal drainage grate protruding into her lane of traffic. *Id.* at *1. When the City was added to the suit, it filed a plea to the jurisdiction alleging lack of notice. *Id.* Of the four reports cited as evidence of actual notice in response to the City's plea, only one report named one of the two individual plaintiffs. *Id.* at *3. No evidence showed that the City received the report. *Id.* An affidavit was provided to show City Public Works Department workers were attending the grate after the accident and Emergency Medical Services was present at the scene. *Id.* This court held that the evidence presented no jurisdictional fact issue regarding actual notice, rejecting an attempt to "cobble" inferences that the City may have known its grate was a cause of the accident and someone may have been injured in the accident. *Id.* McGowen argues that this case does not require a similar "cobbling" of inferences. We disagree. As in *Atkins,* the Police Department and Department of Public Works reports do not name McGowen. Only her own driver's crash report states that she was injured as a result of the accident. To support a claim that McGowen's report constitutes actual notice requires piecing together the incomplete information on her report, which was not provided to the City, with information in the other reports and inferring that because the accident reports reflected the same incident date, the City had notice. This "cobbling" of inferences is insufficient to raise a fact question on actual notice.

Under the applicable standard of review, we conclude that the evidence does not raise a fact question as to whether the City had actual notice of McGowen's claim. McGowen has not provided evidence that the City knew she was a

15

passenger in the vehicle involved in the accident with its employee, knew of her alleged injuries, or that the City had actual subjective awareness of its alleged fault. Lack of notice is an incurable jurisdictional defect. Accordingly, we sustain the City's sole issue.

Having sustained the City's issue, we reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing McGowen's claims against the City for lack of subject-matter jurisdiction.


/s/            Kem Thompson Frost
                        Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Wise.